

**FILED**
MAY 16 2024
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CAUSE NO. 2:24CR 42 |
| | ) | |
| v. | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 666(a)(1)(A) |
| VALENCIA FRANKLIN | ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

### Emergency Rental Assistance

1. The Consolidated Appropriations Act of 2021 authorized federal Emergency Rental Assistance funds from the United States Department of Treasury to be provided to states to administer for the benefit of households adversely affected by the COVID-19 pandemic. Lake County, Indiana was a recipient of a portion of these funds. Lake County hired Company A to administer and distribute federal Emergency Rental Assistance funds to eligible Lake County residents.

2. Company A was a not for profit organization located in Merrillville, Indiana that provided social services in Northwest Indiana. Company A received funding through federal grants. During the 2021 calendar year, Company A received federal benefits in excess of $10,000. Lake County provided federal Emergency Rental Assistance funds it received

from the Treasury Department to Company A, and Company A distributed the funds.

3. **VALENCIA FRANKLIN** was an employee of Company A. **FRANKLIN** was supervisor of payroll and accounts payable. As part of her job, **FRANKLIN** volunteered to develop and administer the Emergency Rental Assistance program.

4. Emergency Rental Assistance was available to renters who met certain eligibility requirements and had a valid lease that obligated them to pay rent on a residential dwelling. To obtain Emergency Rental Assistance, an eligible Lake County tenant was required to submit an electronic application to Company A through an online platform with a server located in Virginia. With the application, a tenant was required to submit his or her government-issued ID, landlord name and contact information, and other documentation to show eligibility. After receiving an application, Company A attempted to contact the landlord to request information to verify the tenant's request for rental assistance. When Company A approved an application, Company A typically issued a check for rental assistance payable to the landlord. In certain cases, including when Company A could not make contact with the landlord, Company A issued a check that was payable to both the landlord and the tenant.

## The Scheme to Defraud

5.  Beginning in or about June 2021 and continuing through in or about January 2022, in the Northern District of Indiana, and elsewhere, **VALENCIA FRANKLIN**, knowingly and with intent to defraud, devised, intended to devise, and participated in a scheme to defraud Company A that involved obtaining money by means of materially false and fraudulent pretenses, representations, promises, and concealments.

## The Objective of the Scheme

6.  The purpose of the scheme was to fraudulently obtain Emergency Rental Assistance payments from Company A by submitting false and fraudulent applications in order to collect rental assistance funds to which **FRANKLIN** and others were not entitled.

## The Manner and Means Used to Carry Out the Scheme

7.  **VALENCIA FRANKLIN** caused to be submitted fraudulent Emergency Rental Assistance applications to Company A that contained false statements. Among other false statements, many applications falsely claimed that certain individuals were the landlords for properties when they were not the true landlords.

### Fraudulent Applications Involving **FRANKLIN'S** Family

8.  **FRANKLIN** caused to be submitted applications that falsely claimed that **FRANKLIN'S** family members were landlords for properties.

9. On or about August 22, 2021, Emergency Rental Assistance Application No. 3251 for a property located in Griffith, Indiana, was electronically submitted to Company A. The application falsely stated that M.K., who was **FRANKLIN'S** son, was the landlord. In support of this fraudulent application, **FRANKLIN** prepared a false lease agreement that was submitted to Company A. On or about August 23, 2021, **FRANKLIN** sent an email directing another Company A employee to issue payment that week. On or about August 24, 2021, an individual working for Company A in Indiana designated this application as ready for payment by sending a wire transmission through a server that was located in Virginia. Based on the false representations made in this application, on or about August 26, 2021, Company A issued a check in an amount of approximately $19,200 to M.K.

10. On or about August 26, 2021, Emergency Rental Assistance Application No. 3328 for a property located in East Chicago, Indiana, was electronically submitted to Company A. The application falsely stated that M.K., who was **FRANKLIN'S** son, was the landlord on another property. In support of this fraudulent application, **FRANKLIN** prepared false documents, including a lease agreement and a pay stub, that were submitted to Company A. On or about August 31, 2021, **FRANKLIN** sent an email directing another Company A employee to issue "fast tracked" payment for this application. Based on the false representations made in this application,

4

on or about September 2, 2021, Company A issued a check in an amount of approximately $11,950 to M.K..

11. On or about August 28, 2021, **FRANKLIN** electronically submitted to Company A Emergency Rental Assistance Application No. 3358 for a property located in Munster, Indiana. The application falsely stated that V.B. was the landlord. In support of this fraudulent application, **FRANKLIN** prepared and submitted false documents, including a lease agreement. Before submitting the application, **FRANKLIN** created an email account through gmail. When **FRANKLIN** submitted the application, she falsely represented that this email account belonged to the tenant listed on the application. On or about August 31, 2021, **FRANKLIN** sent an email directing another Company A employee to issue "fast tracked" payment for this application. On or about August 31, 2021, an individual working for Company A in Indiana designated this application as ready for payment by sending a wire transmission through a server that was located in Virginia. Based on the false representations made in this application, on or about September 2, 2021, Company A issued a check in an amount of approximately $24,500.

12. On or about August 30, 2021, Emergency Rental Assistance Application No. 3383 for a property located in Hammond, Indiana, was electronically submitted to Company A. The application falsely stated that V.L., who was **FRANKLIN'S** sister, was the landlord. In support of this

5

fraudulent application, **FRANKLIN** prepared false documents, including a lease agreement and a pay stub. Earlier in 2021, **FRANKLIN** had created an email account through gmail. When this application was submitted, the application falsely represented that the email account created by **FRANKLIN** belonged to the tenant listed on the application. On or about August 31, 2021, **FRANKLIN** sent an email directing another Company A employee to issue "fast tracked" the payment for this application. Based on the false representations made in this application, on or about September 2, 2021, Company A issued a check in an amount of approximately $12,500.

13. On or about September 8, 2021, Emergency Rental Assistance Application No. 3564 for a property located in Hammond, Indiana, was electronically submitted to Company A. The application falsely stated that Z.L., who was **FRANKLIN'S** brother, was the landlord. In support of this fraudulent application, **FRANKLIN** prepared false documents, including a lease agreement. Before the application was submitted, **FRANKLIN** created an email account through gmail. When this application was submitted, the application falsely represented that the email account created by **FRANKLIN** belonged to the tenant listed on the application. On or about September 13, 2021, **FRANKLIN** sent an email directing another Company A employee to issue payment that week. On or about September 13, 2021, an individual working for Company A in Indiana designated this application as

6

ready for payment by sending a wire transmission through a server that was located in Virginia. Based on the false representations made in this application, on or about September 16, 2021, Company A issued a check in an amount of approximately $15,400.

14. On or about September 13, 2021, Emergency Rental Assistance Application No. 3631 for a property located in Merrillville, Indiana, was electronically submitted to Company A. The application falsely stated that C.E., who was **FRANKLIN'S** cousin, was the landlord. In support of this fraudulent application, **FRANKLIN** prepared false documents, including a false statement of unemployment benefits, that were submitted to Company A. On or about September 13, 2021, **FRANKLIN** sent an email directing another Company A employee to issue payment that week. Based on the false representations made in this application, on or about September 16, 2021, Company A issued a check in an amount of approximately $23,100. **FRANKLIN** delivered the check to C.E. After C.E. deposited the check, at **FRANKLIN'S** direction, C.E. gave **FRANKLIN** a cash payment of approximately half the value the check.

15. On or about September 13, 2021, Emergency Rental Assistance Application No. 3644 for a property located in Hammond, Indiana, was electronically submitted to Company A. The application falsely stated that Z.L., who was **FRANKLIN'S** brother, was the landlord. In support of this

fraudulent application, **FRANKLIN** prepared false documents, including a false paystub. Company A did not issue a payment for this application.

16. On or about September 13, 2021, Emergency Rental Assistance Application No. 3646 for a property located in East Chicago, Indiana, was electronically submitted to Company A. The application falsely stated that Z.L., who was **FRANKLIN'S** brother, was the landlord. In support of this fraudulent application, **FRANKLIN** prepared false documents, including a false pay stub, that were submitted to Company A. On or about October 26, 2021, **FRANKLIN** sent an email directing another Company A employee to issue payment on October 28, 2021, for this application. Based on the false representations made in this application, on or about October 28, 2021, Company A issued a check in an amount of approximately $11,300.

17. On or about September 14, 2021, Emergency Rental Assistance Application No. 3675 for a property located in Merrillville, Indiana, was electronically submitted to Company A. The application falsely stated that M.K., who was **FRANKLIN'S** son, was the landlord. **FRANKLIN** directed C.E. to complete and submit this application using M.K.'s name as the landlord. Based on the false representations made in this application, on or about October 20, 2021, Company A issued a check in an amount of approximately $15,650.

18. On or about September 14, 2021, an Emergency Rental

8

Assistance Application No. 3670 for a property located in Highland, Indiana, was electronically submitted to Company A. The application falsely stated that C.E., who was **FRANKLIN'S** cousin, was the landlord. In support of this fraudulent application, **FRANKLIN** prepared false documents, including a false pay stub, that were submitted to Company A. On or about October 4, 2021, **FRANKLIN** sent an email directing another Company A employee to issue payment that week. On or about October 7, 2021, an individual working for Company A in Indiana designated this application as ready for payment by sending a wire transmission through a server that was located in Virginia. Based on the false representations made in this application, on or about October 8, 2021, Company A issued a check in an amount of approximately $17,600. **FRANKLIN** delivered the check to C.E. After C.E. deposited the check, at **FRANKLIN'S** direction, C.E. gave **FRANKLIN** a cash payment of approximately half the value the check.

19. On or about September 14, 2021, Emergency Rental Assistance Application No. 3650 for a property located in Merrillville, Indiana, was electronically submitted to Company A. The application falsely stated that C.E., who was **FRANKLIN'S** cousin, was the landlord. In support of this fraudulent application, **FRANKLIN** prepared false documents, including a false pay stub, that were submitted to Company A. On or about October 26, 2021, **FRANKLIN** sent an email directing another Company A employee to

issue payment on October 28, 2021, for this application. Based on the false representations made in this application, on or about October 28, 2021, Company A issued a check in an amount of approximately $23,300. **FRANKLIN** delivered the check to C.E. After C.E. deposited the check, at **FRANKLIN'S** direction, C.E. gave **FRANKLIN** a cash payment of approximately half the value the check.

20. On or about January 10, 2022, before Company A issued IRS Form 1099s to landlords who had been issued Emergency Rental Assistance payments, **FRANKLIN** changed the addresses and social security numbers on file in Company A's system for M.K., Z.L, V.L., and C.E. As explained above, these individuals were listed as landlords on Emergency Rental Assistance applications.

21. In sum, for these eleven fraudulent applications, Emergency Rental assistance payments were sought in the total amount of approximately $191,100. Company A issued Emergency Rental Assistance payments totaling approximately $174,500.

### Fraudulent Applications Where Franklin Obtained Payments for Individual A

22. From in or about June 2021 until in or about October 2021, **FRANKLIN** assisted Individual A in submitting over 30 fraudulent Emergency Rental Assistance applications, many of which falsely identified

the property's landlord. For at least 25 of these applications, Individual A prepared false paystubs that purported to show the tenant's income. These false paystubs were submitted to Company A in support of the applications.

23. When one of Individual A's fraudulent applications was submitted electronically, Individual A notified **FRANKLIN**. When the payment was ready, **FRANKLIN** contacted Individual A and arranged a place to meet in person. When they both arrived at the meeting place, **FRANKLIN** handed the check to Individual A. After the check was deposited, at **FRANKLIN'S** direction, Individual A gave **FRANKLIN** a cash payment of approximately 10% to 20% of the value the check.

24. One of these applications, Applications, No. 3617, was submitted on September 12, 2021, and requested Emergency Rental Assistance for a property in Munster, Indiana. For this application, on or about September 13, 2021, **FRANKLIN** sent an email directing another Company A employee to issue payment that week. On or about September 15, 2021, an individual working for Company A in Indiana designated this application as ready for payment by sending a wire transmission through a server that was located in Virginia. Based on the false representations made in this application, on or about September 16, 2021, Company A issued a check in an amount of approximately $17,700.

25. In sum, for these fraudulent applications where **FRANKLIN**

11

obtained payments for Individual A, Emergency Rental assistance payments were sought in the total amount of $596,910. Company A issued Emergency Rental Assistance payments totaling approximately $177,800.

## COUNTS 1-5
## (Wire Fraud)

26. On or about the following dates, in the Northern District of Indiana and elsewhere, the defendant, **VALENCIA FRANKLIN**, for purposes of executing the above-described scheme and artifice to defraud, transmitted and caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs and signals, including the following:

| COUNT | DATE | WIRE |
|---|---|---|
| 1 | August 24, 2021 | Emergency Rental Assistance Application No. 3251 marked online as ready for payment through server located in Virginia |
| 2 | August 31, 2021 | Emergency Rental Assistance Application No. 3358 marked online as ready for payment through server located in Virginia |
| 3 | September 13, 2021 | Emergency Rental Assistance Application No. 3564 marked online as ready for payment through server located in Virginia |
| 4 | September 15, 2021 | Emergency Rental Assistance Application No. 3617 marked online as ready for payment through server located in Virginia |
| 5 | October 7, 2021 | Emergency Rental Assistance Application No. 3670 marked online as ready for payment through server located in Virginia |

All in violation of Title 18 United States Code, Section 1343.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 6
### (Theft Concerning Federally Funded Programs)

27. Paragraphs 1 through 26 are hereby realleged and incorporated by reference.

28. From on or about June 2021 through on or about October 2021, in the Northern District of Indiana, and elsewhere, the defendant,

**VALENCIA FRANKLIN,**

being an agent of Company A, an organization that received in excess of $10,000 in federal benefits that were to be utilized as part of an Emergency Rental Assistance Program in calendar year 2021, embezzled, stole, obtained by fraud, without authority knowingly converted to the use of a person not the rightful owner, and intentionally misapplied, money worth at least $5,000 that was under the care, custody, and control of Company A,

In violation of Title 18, United States Code, Section 666(a)(1)(A).

## FORFEITURE ALLEGATIONS

1.  The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures to the United States of America pursuant to Title 18, United States Code, Section 982(a)(2).

2.  Upon conviction for any of the offenses in violation of Title 18, United States Code, Section 1343, alleged in Counts 1 to 5 of the Indictment, and Title 18, United States Code, Section 666, alleged in Count 6 of the Indictment, the defendant, **VALENCIA FRANKLIN**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

3.  The United States will also seek a forfeiture money judgment equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

4.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

*/s/ Foreperson*
FOREPERSON

CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY

By: */s/ Kevin F. Wolff*
   Kevin F. Wolff
   Assistant United States Attorney